Joshua A. Block*                                      John Mejia (Bar No. 13965)
**ACLU LGBT Project**                                 Leah M. Farrell (Bar No. 13696)
125 Broad Street, Floor 18                            **ACLU of Utah**
New York, New York, 10004                             355 North 300 West
Telephone: (212) 549-2593                             Salt Lake City, Utah 84103
Facsimile: (212) 549-2650                             Telephone: (801) 521-9862
jblock@aclu.org                                       jmejia@acluutah.org
                                                      lfarrell@acluutah.org

*Pro hac vice motion to follow*                       *Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **ANGIE ROE and KAMI ROE,**<br><br>Plaintiffs,<br><br>vs.<br><br>**W. DAVID PATTON**, in his official capacity as the Executive Director of the Utah Department of Health, and **RICHARD OBORN,** in his official capacity as the Director of Utah's Office of Vital Records and Statistics,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Case No. 2:15-cv-00253-DB |

Before the court is a motion by Plaintiffs Angie Roe and Kami Roe (together, "Plaintiffs") for a preliminary injunction against Executive Director W. David Patton in his official capacity as the Executive Director of the Utah Department of Health and Director Richard Oborn in his official capacity as the Director of Utah's Office of Vital Records and Statistics ("Defendants"). Plaintiffs seek an order requiring Defendants to apply certain sections of Utah Uniform Parentage Act, Utah Code Ann §§ 78B-15-201(2)(e), 78B-15-703, 78B-15-704 (the "assisted-reproduction statutes"), to female spouses of women who give birth through

1

assisted reproduction involving the use of donor sperm in the same way that they apply the assisted-reproduction statutes to male spouses in the same situation. Specifically, Plaintiffs seek an order requiring Defendants to recognize Angie Roe as a legal parent of L.R. pursuant to the procedures set forth in the assisted-reproduction statutes and to issue a birth certificate for L.R. that identifies Angie Roe as a legal parent.

For the reasons specified at the hearing on this motion on July 15, 2015, and for the reasons herein, this motion is GRANTED.

## FACTS

The Utah Uniform Parentage Act contains specific provisions for married couples who conceive through assisted reproduction with donor sperm. Under these provisions, the only preconditions necessary for a man to become a legal father of a child born to his wife through assisted reproduction are (a) for him to "consent[] to . . . assisted reproduction by his wife," Utah Code Ann §§ 78B-15-703, and (b) for the consent to "be in a record signed by the woman and her husband, *id.* 78B-15-704(a). If a married man completes these steps, he is the legal father of the child. *Id.* at § 78B-15-201(2)(e). Plaintiffs argue that, under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, a woman who is married to another woman should be allowed to establish parentage by following the same procedures.

Plaintiffs Angie and Kami married on December 20, 2013, which was the first day it became legal for same-sex couples to marry in Utah pursuant to the injunction issued by the U.S. District Court for the District of Utah in *Kitchen v. Herbert*, No. 2:13-CV-00217-RJS. Angie and Kami jointly decided to have a child together with the assistance of sperm from an anonymous donor. On May 21, 2014, with Angie's knowledge and consent, Kami conceived through intrauterine insemination at the University of Utah, School of Medicine. In connection

with the intrauterine insemination, Angie and Kami both signed a document titled "Donor Semen Storage Agreement," which acknowledged that donor semen was being used for insemination of Kami and identified Angie as Kami's wife. Kami gave birth to L.R. on February 7, 2015, at Jordan Valley Medical Center. After L.R.'s birth, Angie and Kami signed an additional document memorializing, ratifying, and reaffirming Angie's consent for Kami to conceive with the assistance of donor semen.

Defendants refuse to recognize Angie as a legal parent of L.R. or identify her as a parent on L.R.'s birth certificate unless Angie adopts L.R. through a step-parent adoption. To complete a step-parent adoption, Angie and Kami would have to file a Petition to Adopt a Minor Stepchild in Utah State Court and pay a filing fee of $360. Angie would also have to submit to a background check by the Utah Bureau of Criminal Identification and the Utah Division of Child and Family Services. Once the adoption petition is submitted, Angie and Kami would have to wait for a judge to schedule a hearing on their adoption petition, and they would then have to appear in person at the hearing to a get the judge's approval for Angie to adopt L.R.

Without a birth certificate showing that she is L.R.'s parent, Angie is unable to prove to third parties, such as daycares, schools, and hospitals, that L.R. is her daughter. This inability interferes with Angie's ability to act as L.R.'s parent, and with L.R.'s ability to fully enjoy the protections and benefits of having Angie as her legally recognized parent.

Defendants have conceded that the Office recognizes male spouses in Angie's identical situation as parents pursuant to Utah's assisted-reproduction statutes and issues a birth certificate with both spouses listed as parents without requiring that the male spouses undergo a stepparent adoption process.

Plaintiffs brought this suit on April 13, 2015 alleging that Defendants' enforcement of the assisted-reproduction statutes for male spouses of women who give birth through assisted reproduction involving the use of donor sperm but not for similarly situated female spouses violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  Plaintiffs filed the present motion for a preliminary injunction the same day.

## ANALYSIS

To secure a preliminary injunction, a movant "must establish the following elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury will result if the injunction does not issue; (3) the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and (4) issuance of the injunction would not be adverse to the public interest." *N. Natural Gas. Co. v. L.D. Drilling, Inc.*, 697 F.3d 1259 (10th Cir. 2012) (internal quotation marks and citation omitted).

### I. Plaintiffs Have Made a Strong Showing They Are Likely to Succeed on the Merits.

Plaintiffs have made a strong showing that they are likely to succeed on a claim that Defendants' enforcement of the assisted-reproduction statutes violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constiution.  There is no dispute that if Angie were a man, her parentage of L.R. would be established under Utah Code Ann §§ 78B-15-201(2)(e), 78B-15-703, 78B-15-704.  In short, the assisted-reproduction statutes enable the spouse of a woman who conceives using donor sperm to establish parentage of the resulting child by consenting to the procedure in writing.  The assisted-reproduction statutes were enacted in 2008, a time when Utah had a state constitutional amendment limiting marriage to a man and a woman.  Consistent with the understanding that the only legal marriages in Utah would consist of a man and a woman, the assisted-reproduction statues refer to the spouse of the birth mother

4

as "man" and "husband."  On their face, the plain terms of the statutes do not apply to Angie because she is not a male spouse.

However, now that the U.S. Supreme Court has established that States must allow same-sex couples to marry "on the same terms and conditions as opposite-sex couples," *Obergefell v. Hodges*, No. 14-556, 2015 WL 2473451, at *19 (U.S. June 26, 2015), the question becomes whether the statues as written comport with the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  May Defendants extend the benefits of the assisted-reproduction statutes to male spouses in opposite-sex couples but not for female spouses in same-sex couples?  As discussed below, the court concludes that Plaintiffs are highly likely to succeed in their claim that such differential treatment is unconstitutional.

The court need not decide whether the statutes classify based on sex or sexual orientation and need not decide the applicable level of scrutiny for an Equal Protection analysis because Defendants have not offered a rational basis for the different treatment of male and female spouses of women who give birth through assisted reproduction involving the use of donor sperm.  At the hearing on this motion, when asked for a reason explaining the statutes' differential treatment, Defendants offered a concern over accuracy of vital statistic records for researchers.  They could not, however, specify any tangible effect that recognizing a female spouse as a parent would have on the accuracy of those records.  Defendants also cited a concern for making parentage clear as another potential reason for the distinction.  They could not explain, however, how recognizing a female spouse as a parent and listing her as a parent on a birth certificate undermined the clarity of parentage.  The court finds that neither is sufficient as a rational basis to satisfy the challenged distinctions under an Equal Protection analysis.

Because Defendants were unable to provide a rational basis for treating male spouse of women who give birth through assisted reproduction involving the use of donor sperm differently than identically situated female spouse, the court need not reach the question of which level of scrutiny applies, and the court concludes the statute violates Plaintiffs' rights to Equal Protection.

## II. Plaintiffs Will Suffer Irreparable Injury If the Injunction Does Not Issue

Because the statues, as currently enforced, violate the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs are experiencing irreparable harm as a matter of law. In *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012), the Court stated:

> "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Furthermore, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001) (quotations omitted).

Additionally, Angie and L.R. are suffering immediate, irreparable harm because L.R. is denied the security of two legal parents each day that the State does not recognize Angie's parental status.

## III.    THE BALANCE OF HARMS FAVORS PLAINTIFFS.

Defendants have offered no tangible harm that they would experience from applying the assisted-reproduction statutes to female spouses of women who conceive through donor sperm. Nor would any theoretical harm from applying the Statutes to female spouses tip the scale in Defendants' favor. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d. 1114, 1145 (10th Cir. 2013) (en banc) (plurality) ("When [a] law…is likely unconstitutional, the [] interest [of those the government represents, such as voters] do not outweigh [a plaintiff's interest] in having [its

6

constitutional rights protected." (quoting *Awad*, 670 F.3d 1131-32 (alternations in *Hobby Lobby*)).

On the other hand, as noted above, Plaintiffs would continue to suffer both constitutional and irreparable harm without an injunction. The Plaintiffs thus carry the balance of harms.

### IV.     AN INJUNCTION IS IN THE PUBLIC INTEREST

It is clear from *Awad* that, "it is always in the public interest to prevent the violation of a party's constitutional rights." 670 F.3d at 1132.

### CONCLUSION AND ORDER

For all these reasons, the Court GRANTS Plaintiffs' motion for preliminary injunction and ORDERS as follows:

Defendants are enjoined from enforcing Utah Code Ann §§ 78B-15-201(2)(e), 78B-15-703 and § 78B-15-704 in a way that differentiates between male spouses of women who give birth through assisted reproduction with donor sperm and similarly situated female spouses of women who give birth through assisted reproduction with donor sperm. If Defendants continue to enforce Utah Code Ann §§ 78B-15-201(2)(e), 78B-15-703 and § 78B-15-704, with respect to male spouses of women who give birth through assisted reproduction with donor sperm, they must also apply the statute equally to female spouses of women who give birth through assisted reproduction with donor sperm.

SIGNED this 22nd day of July, 2015.

BY THE COURT:

_____
Dee Benson
United States District Judge